UNITED STATES of America, Appellee,

v.

John DOE, Defendant–Appellant.

No. 93 CR 948 (RJD).

United States District Court,
E.D. New York.

Feb. 2, 1995.

Christopher R. Lynn, Christine E. Yaris, New York City, for defendant-appellant.

Karen Popp, Asst. U.S. Atty., E.D.N.Y., Brooklyn, NY, for appellee.

**ORDER**

DEARIE, District Judge.

The Clerk of the Court is directed to make available to the public the attached redacted version of the Court's Memorandum and Order dated October 4, 1994 in the captioned case. This redacted version along with this Order shall constitute part of the public record of this criminal matter in accordance with Magistrate Judge Steven Gold's decision granting defendant's motion to expunge the record.

SO ORDERED.

**79**

**ATTACHMENT**

**MEMORANDUM AND ORDER**

DEARIE, District Judge.

Defendant John Doe appeals from a judgment of conviction for public lewdness in the Gateway National Recreation Area, in violation of 36 C.F.R. § 7.29(c). After a non-jury trial, Magistrate Judge Steven Gold found John Doe guilty and sentenced him to a fine of $1.00 and a mandatory special assessment of $5.00. The Court has jurisdiction over this appeal pursuant to 18 U.S.C. § 3402.

John Doe raises two issues on appeal. First, he argues that the government failed to present sufficient evidence that the conduct occurred in a public place. Second, John Doe contends that he was denied a fair trial by the ineffective assistance of counsel, who failed to argue that the charges against John Doe should be dismissed, either (a) because they were the result of selective prosecution, or (b) because the statutory language is unconstitutionally vague.

The Court reverses John Doe's conviction on the grounds that the there was insufficient evidence to prove an essential element of the offense, that the act occurred in a public place. Therefore, there is no need to reach John Doe's secondary challenges, based on the alleged ineffective assistance of his trial counsel.

**BACKGROUND**

John Doe was charged with a violation of 36 C.F.R. § 7.29(c), which prohibits public lewdness in the Gateway National Recreational Area. At trial, the government called a single witness, United States Parks Officer John Nicoletti. Officer Nicoletti testified that, at approximately 8:45 p.m. on Sunday, April 4, 1993, while working in plain clothes, he observed John Doe engaging in oral sex with another man. Nicoletti identified himself as a police officer and arrested both men. (Tr. 6–7.)

The defense did not challenge Officer Nicoletti's version of events. Essentially, the only issue litigated by the defense was the location of the incident. On direct examination, Officer Nicoletti testified that there

were no other people in the vicinity of the defendant. (Tr. 7.) On cross, the officer explained that he discovered the two men in a wooded area approximately 10 feet from a bicycle path and 50 feet east of a parking lot which is located just off the Belt Parkway. (Tr. 10.) The officer testified that the bicycle path itself was very well lit, but that shrubbery blocked his view of the defendant and his companion from the parking lot as well as from the nearby bicycle path. (Tr. 10–11.) Officer Nicoletti admitted that, in order to observe the defendant, he had to leave the bicycle path and walk "into the shrubs." [1] (Tr. 10–11.) Nicoletti estimated that he saw five other people in the area during the entire evening, although he saw no cyclists on the bicycle path and no families with children. (Tr. 11–12.)

*The Statute*

John Doe was convicted of violating 36 C.F.R. § 7.29(c), which expressly adopts and incorporates section 245.00 of the New York Penal Law. Section 245.00 provides that:

> A person is guilty of public lewdness when he intentionally exposes the private and intimate parts of his body in a lewd manner or commits any other lewd act (a) in a public place, or (b) in private premises under circumstances in which he may readily be observed from either a public place or from other private premises, and with intent that he be so observed.

N.Y.Penal Law § 245.00.

A quick parsing of the statutory language reveals the portion of section 245.00 that is relevant to the case at bar. As Magistrate Judge Gold immediately recognized, John Doe was clearly not guilty of "intentionally expos[ing] the private and intimate parts of his body in a lewd manner," since he was fully clad when arrested by Officer Nicoletti.

(Tr. 16–17.) In addition, there was insufficient evidence to convict John Doe of section (b) of the offense, since there was simply no evidence that John Doe acted with intent that he be observed. Indeed, the evidence clearly indicates the contrary. Accordingly, the only issue in this case is whether John Doe was guilty of committing a lewd act "in a public place."

*The Magistrate Judge's Decision*

In the court below, John Doe argued that his conduct did not constitute public lewdness because it did not occur "in a public place," as that phrase was defined by the New York Court of Appeals in *People v. McNamara*, 78 N.Y.2d 626, 578 N.Y.S.2d 476, 585 N.E.2d 788 (1991). At the end of the trial, Magistrate Judge Gold retired to consider his verdict in light of *McNamara*. (Tr. 17.) In *McNamara*, the Court of Appeals assessed the adequacy of several informations in which defendants were charged with public lewdness for engaging in sexual acts in parked cars. The court found that the factual allegations in those informations were insufficient to establish the statutory element of a "public place," holding that the interior of a parked vehicle is a public place within the meaning of section 245.00 only "where objective circumstances establish that lewd acts committed there can, and likely would, be seen by the casual passerby, whose sensibilities the statute seeks to protect." *McNamara*, 578 N.Y.S.2d at 481, 585 N.E.2d at 793. John Doe argued that since the evidence demonstrated that the incident did not occur in an area likely to be viewed by the casual passerby, he could not be found guilty of the public lewdness statute. (Tr. 16.)

Upon his return to the courtroom, Magistrate Judge Gold stated that, even though he found John Doe's argument "viscerally ap-

---

1. The testimony on this issue during cross-examination is not a model of clarity:

> Q. Your testimony is that as you stand in the parking lot you can see the bike path. Is that your—
> A. If you stand in the parking lot?
> Q. Yes.
> A. You can see the bike path?
> Q. Can you?
> A. Sure, yes.
> Q. You can see the area they were, through the shrubs?
> A. From?
> Q. From the parking lot.
> A. No.
> Q. You actually have to walk down the—
> A. Into the—
> Q. bike path.
> A. —*into the shrubs*, yes. O.k.

(Tr. 10–11) (emphasis added).

pealing," he did not construe *McNamara* as applying to a federal park. (Tr. 17.) Magistrate Judge Gold correctly noted that, under section 245.00(a), the defendant's intent is irrelevant: "John Doe's belief that he may have been in a private and secluded part of the park is not really germane to the legal analysis of whether or not the place where the act in question was public or not." (Tr. 18.) The Magistrate Judge stated that the plain language of section 245.00, "which talks about public places," would "certainly include federal park land that is opened to the public." (Tr. 18.) Furthermore, Magistrate Judge Gold was not persuaded that "open park land" was analogous to the interior of a vehicle, finding, for example, that it was reasonable to have an expectation of privacy inside a car, but that it was "a much greater stretch" to have such an expectation in public park land. (Tr. 18.) Finally, Magistrate Judge Gold asserted that, unlike here, the issue in *McNamara* was the sufficiency of charging instruments, which were deemed deficient because they "failed to establish that the respondents' acts were capable of observation." (Tr. 18.) Magistrate Judge Gold finished:

> ... I cannot conclude, based on *People* versus *McNamara* or the plain meaning of the statute, that a federal park area, open to the public, within 50 feet of the parking entrance to the park, is a private place rather that [sic] a public place. I cannot reach that conclusion. Consequently, I'm rendering a judgment of guilty in this case. I'm imposing the special assessment of $5.00 and I am imposing a 1 dollar fine

because I find the conduct not intended or venal in any particular way....

(Tr. 21.)

## DISCUSSION

*Sufficiency of the Evidence*

John Doe first argues that his conviction must be reversed because the government presented insufficient evidence to prove beyond a reasonable doubt that the act in question was committed in a public place. A defendant challenging his conviction on sufficiency grounds bears a "very heavy burden." *United States v. Rosenthal,* 9 F.3d 1016, 1024 (2d Cir.1993) (citations and internal quotation marks omitted). *See also United States v. Brewer,* 36 F.3d 266, 268 (2d Cir.1994) (citations omitted). The reviewing court must interpret the evidence in the light most favorable to the government to determine if " '*any* rational trier of fact could have found the essential elements of the crime [proved] beyond a reasonable doubt.' " *United States v. Maldonado–Rivera,* 922 F.2d 934, 979 (2d Cir.1990) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)), *cert. denied,* 501 U.S. 1211, 111 S.Ct. 2811, 115 L.Ed.2d 984 (1991). Even employing this exacting standard of review, the Court agrees with John Doe that the evidence adduced at trial was insufficient to prove that the act occurred in a public place.

As previously noted, 36 C.F.R. § 7.29(c) expressly adopts and incorporates New York Penal Law § 245.00, the statute interpreted by the New York Court of Appeals in *McNamara.* Both parties rely heavily on *McNamara* as the appropriate way to interpret the federal lewdness statute.[2] (*See, e.g.,* Govern-

---

**2.** At oral argument, the government briefly alluded to an alternate basis upon which the conviction could be sustained: the Court could adopt a *per se* rule holding that as long as the act occurred in Gateway National Recreational Area, the "public place" requirement of 36 C.F.R. § 7.29(c) is satisfied. The Court declines to adopt this interpretation. The identical argument was considered, and rejected, by the New York Court of Appeals in *McNamara:* "were we to adopt the People's contention we would in effect be adopting the definition of 'public place' found in article 240 [of the New York Penal Law]—'a place to which the public or a substantial group of persons has access.' The Legislature chose not to make that same broad definition applicable to article 245; nor should we."

*McNamara,* 578 N.Y.S.2d at 480, 585 N.E.2d at 792.

Even in the absence of *McNamara,* the Court might not be at liberty simply to adopt the broadest possible interpretation of the term public place. Where there is ambiguity in a criminal statue, it may be appropriate to apply the rule of lenity to resolve the "ambiguity in the ambit of the statute's coverage" in favor of the defendant. *See Crandon v. United States,* 494 U.S. 152, 158, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990). In this case, ordinary rules of statutory construction do not, in the Court's view, remove the ambiguity surrounding the term public place. Accordingly, the rule of lenity would suggest that doubts with

ment's Brief at 6 n. 3; Defendant's Brief at 8.) Accordingly, the Court will follow *McNamara*'s guidance in interpreting 36 C.F.R. § 7.29(c), the regulation prohibiting public lewdness in the Gateway National Recreational Area.

The *McNamara* court, in an opinion joined by six judges as against only one dissenter, commenced its analysis of section 245.00 by noting that "in the context of this statute the phrase [public place] has no single readily ascertainable 'plain meaning.'" *McNamara*, 578 N.Y.S.2d at 478, 585 N.E.2d at 790. Assessing both the language and structure of the statute, as well as its legislative history, the court found, as did Magistrate Judge Gold, that a defendant's intent is "irrelevant to determining what constitutes a 'public place'" under the statute. *McNamara*, 578 N.Y.S.2d at 480, 585 N.E.2d at 792. Nevertheless, the court observed that since the term public place "has no cut-and-dried meaning," it is necessary to interpret it in a manner consistent with the purpose of the statute. The Court of Appeals then found that section 245.00, which is designated an "Offense[] Against Public Sensibilities," was enacted "'to prevent the open flouting of societal conventions,'" not to prohibit the acts of "'persons who desire privacy and who take reasonable measures to secure it.'" *McNamara*, 578 N.Y.S.2d at 481, 585 N.E.2d at 793, (quoting *New York Model Penal Code and Commentaries*, part II, § 251.1, comment 2, at 452 (ALI 1980)). It is in this context that the *McNamara* court held that "the interior of a vehicle parked at a stated address is not itself a 'public place,' but it may become one under circumstances indicating that the car's interior is visible to a member of the passing public, and that the vehicle is situated in a place where it likely would be observed by such a person." *McNamara*, 578 N.Y.S.2d at 481, 585 N.E.2d at 793. Under *McNamara*, therefore, a place is considered public "when the objec-

tive circumstances establish that the lewd acts committed there *can and likely would be seen by the casual passerby*." *McNamara*, 578 N.Y.S.2d at 482, 585 N.E.2d at 793 (emphasis added).

The Court finds that the government failed as a matter of law to prove that the act occurred in a public place. Officer Nicoletti testified that in order to observe the defendant's activities, he had to walk off the bicycle path and "into the shrubs." (Tr. 10–11.) The only photograph entered into evidence depicts an area that, even in broad daylight, is dark and shrouded with shrubbery. (Defendant's Exhibit 2–H.) Moreover, John Doe's arrest took place, not in daylight, but at 8:45 on a Sunday evening. In this appellate posture, the Court is duty bound to construe the facts in the light most favorable to the government; the Court may not, however, fill in evidence that is not there.

Simply stated, there is nothing in the language of section 245, or in the *McNamara* court's construction of the statute, that suggests that the outdoors must always be a public place. While the policy and goals of section 245 invite expansive interpretation, there must be some basis in fact to support the conclusion that the activity "likely would be seen by the casual passerby." That evidence is lacking here. This incident occurred on an April night, in the off season, and in an area obscured by thick bushes. The arresting officer, hardly a casual passerby, was on patrol searching for evidence of homosexual behavior or drug activity[3] and yet he could not see the defendant and his companion until he left the path and penetrated the apparently dense shrubbery. While a reasonably secluded spot in the bushes will not provide any guarantee of a safe haven for those intent on outdoor sexual activity, the precise circumstances presented here do not permit a reasonable trier of fact to conclude that the activity in question occurred in a public place. Since this element

---

respect to this term be resolved in the defendant's favor.

**3.** Officer Nicoletti's actual testimony during cross-examination is as follows:

Q. So, when you and your partner were out there in plain clothes you were, in fact, looking for male homosexuals, right?
A. Or drug activity, yes.
(Tr. 13.)

of the offense was not proven, the conviction must be reversed.

## CONCLUSION

The defendant's conviction is reversed. The matter is remanded to the magistrate judge, with an instruction to dismiss the charge.

SO ORDERED.

Dated: Brooklyn, New York

October 4, 1994