Opinion
THE COURT.*
I.
INTRODUCTION
On November 25, 2002, a criminal complaint was filed against appellant, Stephen Mark Lake, alleging a single count of violating Penal Code section 647, subdivision (a), which provides: “Every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor: Q] (a) Who solicits anyone to engage in or who engages in lewd or dissolute conduct in any public place or in any place open to the public or exposed to public view.”
The case was one of a large number of cases filed as the result of a law enforcement decoy operation targeting unlawful male-male sexual activities in Roeding Park. The cases fell generally into two categories: engagement and solicitation. In the engagement cases, the defendants were arrested for and charged with engaging in lewd or dissolute conduct, primarily in the Roeding Park restrooms. In the solicitation cases, such as this one, the defendants were charged with solicitation of lewd or dissolute conduct in a public place.
Before this or any of the other Roeding Park cases proceeded to trial, a consolidated motion to dismiss was filed on behalf of all the defendants on the grounds that the defendants were the victims of discriminatory law enforcement because, despite the existence of numerous complaints of male-female sexual activity in Roeding Park, the Fresno County Sheriff targeted only male-male sexual activity in its decoy operation. After the trial court denied the motion to dismiss, defendants sought an extraordinary writ in this court. While the petition was filed on behalf of both groups of defendants— those charged with the engagement prong of Penal Code section 647, *Supp. 4 subdivision (a) and those charged with the solicitation prong of section 647, subdivision (a)—the focus of the petition was on activity occurring in the Roeding Park restrooms, all of which related to the engagement cases only. Because doubts as to the propriety of granting writ relief should be resolved in favor of denial of relief where the issue can be raised at trial, and because petitioners had the ability to raise the issue of discriminatory law enforcement at trial, relief was denied.
The matter then proceeded to trial on February 6, 2006. Appellant did not raise the issue of discriminatory law enforcement in the trial court. Appellant was convicted of a violation of Penal Code section 647, subdivision (a).
Appellant filed a timely appeal challenging this conviction on two grounds: (1) that the trial court erred in denying his motion under Penal Code section 1118.1 because the People had presented no evidence that anyone who might be offended would be present at the time the solicited act was to occur; and (2) that the trial court erred in denying his Murgia motion, which was based on a claim of invidious discriminatory prosecution. (Murgia v. Municipal Court (1975) 15 Cal.3d 286 [124 Cal.Rptr. 204, 540 P.2d 44].)
The People did not respond in any way to the appeal and did not appear at the scheduled hearing. On December 5, 2006, this court issued an order reversing judgment on both grounds. Thereafter, the People submitted a request for rehearing which this court granted on January 4, 2007. The granting of the People’s request for rehearing had the effect of vacating the original order reversing the judgment of conviction and rendering it a legal nullity.
Both appellant and the People have now filed briefs and both sides appeared and argued the case on June 1, 2007. Thereafter, both sides were given leave to file supplemental briefs regarding the elements of the crime at issue, and the matter was resubmitted for decision on June 28, 2007.
II.
DISCUSSION
A. The Motion for Acquittal.
Under Penal Code section 1118.1, the court must grant a motion for judgment of acquittal “ ‘if the evidence then before the court is insufficient to sustain a conviction’ on appeal.” (5 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Criminal Trial, § 564, p. 806.) Witkin explains that a trial court ruling on a section 1118.1 motion must apply the same test utilized by the *Supp. 5 appellate court in reviewing a judgment of conviction, i.e., whether there is “substantial evidence of the existence of each element of the offense charged.” (5 Witkin & Epstein, supra, § 564, p. 806, citing People v. Wong (1973) 35 Cal.App.3d 812, 828 [111 Cal.Rptr. 314] and People v. Mathews (1994) 25 Cal.App.4th 89, 97 [30 Cal.Rptr.2d 330].)
Here, the question of whether the evidence, taken in the light most favorable to the verdict, is sufficient to support a conviction under Penal Code section 647, subdivision (a), hinges in part on whether the crime requires that (1) appellant knew or reasonably should have known that someone might be present who could be offended by the requested conduct, or (2) appellant knew or reasonably should have known that someone was likely to be present who could be offended by the requested conduct, or (3) that appellant knew or reasonably should have known that someone would be present who could be offended by the requested conduct.
The analytical difficulty in determining exactly what the statute requires is illustrated by the many changes which have occurred in the so-called standard California jury instructions relating to this crime. There have been no fewer than eight versions of the standard instruction, which have differed primarily in their treatment of this element. Some of the “standard” instructions have required that the defendant know or should know that there “will be present” a person who may be offended by such conduct. (CALJIC No. 16.400 (1980 & 1990 rev.).) Others have required only that the defendant know or should know a third person was “likely to be present, likely to observe the conduct, and likely to be offended thereby.” (CALJIC No. 16.400 (1996 rev.).) Most recently, the Judicial Council of California promulgated an instruction which requires only that the defendant know or should know that “someone might be present who could be offended by the requested conduct.” (Judicial Council of Cal. Crim. Jury Instns. (2007-2008) CALCRIM No. 1162.)
The difficulty in determining the meaning of the statute is heightened by the fact that many of the reported decisions in this area involve the so-called “engagement cases” where the appellant is charged under the same statute with lewd and dissolute conduct, as opposed to only solicitation of that conduct. In those cases, it is not necessary for a fact finder to determine what the appellant knows or should know at the time a solicitation occurs as to what will or, under some versions of the law, might, happen in the future, because evidence can be presented as to what in fact did occur and what the conditions were at the time the offensive conduct took place.
Penal Code section 647, subdivision (a) prohibits both conduct and solicitation of conduct. (People v. Rylaarsdam (1982) 130 Cal.App.3d Supp. 1, *Supp. 6 5, fn. 1 [181 Cal.Rptr. 723].) In many cases the defendant is arrested after the actual conduct occurs and the issue then is whether the conduct occurs in a “public place.” In addressing the question of what constitutes “ ‘lewd or dissolute conduct’ ” under the statute, the California Supreme Court has in a sense found that the statute prohibits “only the solicitation or commission of conduct in a public place or one open to . . . public view ... by a person who knows or should know of the presence of persons who may be offended by the conduct.” (Pryor v. Municipal Court (1979) 25 Cal.3d 238, 244 [158 Cal.Rptr. 330, 599 P.2d 6 36], italics added.) However, the court seemingly contributed to the confusion attendant to this question by stating in the same case: “Finally, in In re Steinke [(1969)] 2 Cal.App.3d 569, 576 [82 Cal.Rptr. 789], the court stated that ‘the gist of the offense proscribed in [Penal Code section 647] subdivision (a) . . . is the presence or possibility of the presence of some one to be offended by the conduct.’ We agree-, even if conduct occurs in a location that is technically a public place, a place open to the public, or one exposed to public view, the state has little interest in prohibiting that conduct if there are no persons present who may be offended. The scope of section 647, subdivision (a), should be limited accordingly.” (Id. at p. 256, fn. omitted, italics added.)
Thus, while the statute requires more than that the conduct occur in a public place, it also requires some probability that the conduct will be witnessed and that the appellant know or reasonably should know of that. The difficulty is in deciding what that probability is when the conduct itself never occurs because the fact finder is required to determine, based on the evidence presented, what the likelihood of observation is and whether appellant knows or should know.
In Pryor, the appellant had been arrested after soliciting an undercover officer to engage in an act of oral copulation. The evidence showed that the two had discussed possible locations and the appellant had suggested parking in a nearby parking lot, while the officer suggested going to his home. When the appellant agreed, he was arrested. At trial, the jury was instructed that oral copulation between males was “ ‘lewd or dissolute’ ” and that “ ‘[i]f the solicitation occurred in a public place, it [was] immaterial that the lewd act was intended to occur in a private place.’ ” (Pryor v. Municipal Court, supra, 25 Cal.3d at p. 245, italics added.)
Finding the statute was unconstitutionally vague with respect to the term “lewd or dissolute conduct,” the Supreme Court noted that “even if conduct occurs in a location that is technically a public place, a place open to the public, or one exposed to public view, the state has little interest in prohibiting that conduct if there are no persons present who may be offended.” (Pryor v. Municipal Court, supra, 25 Cal.3d at p. 256.) The court *Supp. 7 therefore held that the statute required a showing that the act solicited was intended to occur in a public place. (Pryor v. Municipal Court, supra, 25 Cal.3d at pp. 250, 256.)
Following Pryor, the Supreme Court considered a habeas corpus petition by an appellant who was convicted of disorderly conduct under Penal Code section 647, based upon the testimony of a police officer who observed him masturbating in a closed pay-toilet stall in a bus station restroom. The door to the toilet stall was solid, except for two 12-by-l8-inch wire mesh grates; the officer looked through the upper grate to observe the appellant’s conduct. The appellant contended that the officer’s observation constituted an illegal search. (In re Anders (1979) 25 Cal.3d 414, 416-117 [158 Cal.Rptr. 661, 599 P.2d 1364].)
Although the court denied the petition without prejudice because it should have been filed in the trial court, it cited Pryor, noting that the trial court would need to apply the facts to the statute as construed in Pryor, and highlighted in particular the question of whether the appellant knew or should have known of the presence of persons who might be offended by his act. (In re Anders, supra, 25 Cal.3d at pp. 416-117.)
Finally, in People v. Rylaarsdam, supra, 130 Cal.App.3d Supp. 1, two appellants were separately tried and convicted for violating Penal Code section 647, subdivision (a). In the case of the first appellant, a police officer had entered a motion picture booth in an adult bookstore. After the officer had been in the booth for a period of time he observed an erect penis protruding from a hole in the partition between the officer’s booth and an adjacent booth. The officer entered the adjacent booth and arrested the appellant. In the case of the second appellant, a police officer in a public restroom had observed appellant seated on a toilet in an open stall masturbating.
In reviewing the convictions, the court interpreted the holding in Pryor, that the appellant “know or should know of the presence of a person who may be offended,” to include two parts: “First, it is a factual question whether [the first appellant] knew or should have known of the other person’s presence. (In re Anders[, supra,] 25 Cal.3d 414 . . . .) Secondly, it is a factual question whether [the first appellant] knew or should have known that the observer ‘may be offended’ by such conduct.” (People v. Rylaarsdam, supra, 130 Cal.App.3d at p. Supp. 9.)
One of the issues raised on appeal was whether the trial court had properly refused to give the appellant’s alternative instruction that read: “ ‘The jury is instructed that even if the alleged conduct occurs in a location that is technically a public place, a place open to the public or one exposed to public *Supp. 8 view, that there is no violation if there are no persons present who may be offended.’ ” (People v. Rylaarsdam, supra, 130 Cal.App.3d at p. Supp. 11.) In addressing this issue, the court referred to the holding in Pryor that “ ‘even if conduct occurs in a location that is technically a public place, a place open to the public, or one exposed to public view, the state has little interest in prohibiting that conduct if there are no persons present who may be offended.’ ” (Ibid., quoting Pryor v. Municipal Court, supra, 25 Cal.3d at p. 256.)
The court read Pryor to mean that there must be third parties present who might be offended, citing the Pryor court’s reference to the rationale that “ ‘[t]he statute thus serves the primary purpose of protecting onlookers who might be offended by the proscribed conduct.’ ” (People v. Rylaarsdam, supra, 130 Cal.App.3d at p. Supp. 12, quoting Pryor v. Municipal Court, supra, 25 Cal.3d at p. 255.) “We believe that the repeated references in the Supreme Court’s opinion to the presence of a person who may be offended were not inadvertent. The offense is thus made one requiring a victim who witnesses the offensive conduct, thereby enhancing certainty of its commission, whereas if there were no victim, the fact of the commission of the conduct might depend upon proof derived solely from circumstantial evidence.” (People v. Rylaarsdam, supra, 130 Cal.App.3d at pp. Supp. 12-13.)
Although in that case the court found the instruction, permitting the jury to find guilt if a person who may be offended “ ‘will be present,’ ” was erroneous, and that the court should have given the instruction requested by the appellant, it found the error harmless because in both cases third parties were present that the appellants were aware of and there was nothing to trigger a reasonable belief that those individuals would not have been offended. (People v. Rylaarsdam, supra, 130 Cal.App.3d at pp. Supp. 9-13, italics added.)
Cases from other states involving differently worded statutes addressing the same or similar crimes have required more than a possibility that the offensive conduct will be observed, particularly where the appellant took steps to remain unseen. For example, in People v. Legel (1974) 24 Ill.App.3d 554 [321 N.E.2d 164], the court stated: “ ‘It is the probability of public view that is crucial rather than the ownership or use of the particular real estate upon which the act occurs. For example, a person standing nude before a lighted window of his private apartment at night, adjacent to a well traveled public sidewalk would be, for purposes of this statute, in a public place. Contrawise, a couple in a parked car on a public right-of-way but in a lonely country lane might not be in a public place, depending upon the likelihood of others traversing this particular area at such hours.’ ” (Id., 321 N.E.2d at p. 168, quoting Com. com. to 111. Rev. Stat. 1971, ch. 38, § 11-9.) These out-of-state authorities generally *Supp. 9 require a finding phrased in terms of probability or likelihood of observation, not mere possibility. (See, e.g., Commonwealth v. Nicholas (1996) 40 Mass.App.Ct. 255, 257-258 [663 N.Ed.2d 266]; U.S. v. Doe (E.D.N.Y. 1995) 884 F.Supp. 78, 82 [“there must be some basis in fact to support the conclusion that the activity ‘likely would be seen by the casual passerby’ ”]; State v. Broad (1979) 61 Hawaii 187, 189-190 [600 P.2d 1379], citing State v. Rocker (1970) 52 Hawaii 336, 341 [475 P.2d 684] [evidence required to prove the act occurred in a public place where appellant was likely to be seen by casual observers].)
What is clear is that the statute as interpreted by our state Supreme Court requires some likelihood that third persons be present and be offended by the conduct. As to the degree of likelihood required, the law requires more than mere speculation. In none of the engagement or solicitation cases have the courts upheld convictions where there was only the mere “possibility” that the offending conduct would be observed. Accordingly, the court finds the statute requires the People prove beyond a reasonable doubt that the defendant knew or reasonably should have known that someone was likely to be present who could be offended by the requested conduct.
Here, there is a complete lack of any evidence that appellant knew or reasonably should have known that someone was likely to be present who could be offended by the requested conduct. The evidence before the trial court as it considered appellant’s motion for acquittal consisted entirely of Officer Asselin’s testimony. He testified that in response to appellant’s nod he approached appellant in Roeding Park around 7:42 p.m. and that during the course of their conversation appellant repeated several times that he just wanted to “get it on” inside the park. Officer Asselin further testified that appellant told him they could go “just about anywhere” but not the nearby restrooms and that he wanted to wait until after dark so they wouldn’t get caught. Officer Asselin testified that at that point they separated and he drove off. There were other people nearby in the park while the conversation was occurring.
About an hour later Officer Asselin observed appellant again. At that time appellant was parked near the restroom near Playland for about an hour, at which time there were still people in the park. Despite the fact that Officer Asselin remained in the park for another two and a half to three hours after his conversation with appellant, there was no evidence any sexual conduct involving appellant ever occurred that evening. Indeed, there was no evidence the conversation between Officer Asselin and appellant included details of when or where any sexual encounter would occur other than that it would occur after dark and in the park. Because the conversation was completely uncertain as to time and place, there was and, indeed, there could be, no *Supp. 10 evidence as to whether there would likely be other people in the vicinity when the proposed conduct was to actually occur. Thus, it would be impossible for a reasonable jury to conclude without speculating that appellant knew or reasonably should have known that someone was likely to be present who could be offended by the requested conduct, particularly where, as here, appellant explicitly maintained he did not want to “get caught.” Without in any way endorsing the conduct that was proven to have occurred, the court is led to the inescapable conclusion that the People failed to introduce substantial evidence of this element of the crime. Appellant’s motion for acquittal should have been granted.
We do not hold the People cannot succeed in prosecuting future solicitation cases. We further do not hold that in future cases the People must prove that at the time and place the solicited sexual act is to take place there must necessarily be others who would be offended. The facts in this case, when distilled to their simplest form, are that Officer Asselin and appellant agreed to meet at an unspecified time and in an unspecified location in Roeding Park to engage in a sexual act. From these facts, the jury would be required to speculate in order to conclude someone was likely to be present who could be offended. If jurors are required to speculate to return a verdict of guilty, the People have not proven their case beyond a reasonable doubt.
B. The Discriminatory Enforcement Claim.
Appellant also seeks review of a pretrial order denying his Murgia motion for discriminatory enforcement. Respondent claims appellant did not adequately preserve the matter for review because he failed to raise the issue at trial.
The motion was filed on behalf of all of the defendants in the so-called Roeding Park cases, both those who had been charged with engagement offenses and those, like appellant herein, who had been charged with solicitation offenses. As the People have argued, there are serious questions about whether appellant has adequately preserved that claim for review because neither the trial judge, nor the pretrial judge who decided the issue, nor the appellate division on writ review, was specifically asked to distinguish between the engagement cases and the solicitation cases and decide if the decoy operation as applied specifically to the solicitation cases constituted discriminatory prosecution. (People v. Turner (2002) 96 Cal.App.4th 1409, 1412 [118 Cal.Rptr.2d 99].) However, because appellant’s conviction is being reversed on another ground, it is unnecessary for this court to decide that issue. (Joerger v. Mt. Shasta Power Corp. (1937) 9 Cal.2d 267, 269 [70 P.2d 484].)
*Supp. 11 HI.
DISPOSITION
The judgment of conviction is reversed.

 Black, P. J., Levis, J., and Kazanjian, J.